### APPEAL OF NATIONAL FILM PUBLICITY CO.

Docket No. 1807.   Submitted November 24, 1925.   Decided June 21, 1926.

> 1. Capitalized value of contracts acquired without cost may not be included in statutory invested capital or exhausted ratably for the purpose of taking annual deduction from gross income.
> 2. Taxpayer's request for inventory adjustments denied.

*John V. Lee*, Esq., and *John W. Snider*, C. P. A., for the petitioner.

*A. H. Fast*, Esq., for the Commissioner.

Before STERNHAGEN, LANSDON, and ARUNDELL.

This appeal is from the determination of a deficiency in income and profits taxes for the years 1920 and 1921, in the amounts of $3,352.97 and $3,029.42, respectively, or a total of $6,382.39. Three issues are involved in this controversy: (1) depreciation of certain so-called theatre leases for 1920 and 1921; (2) the refusal of the Commissioner to include any value of such so-called leases

in the taxpayer's statutory invested capital; and (3) alleged over-statement of inventories.

The taxpayer is a Delaware corporation with its principal office in St. Louis, Mo., where it is engaged in purchasing, manufacturing, exhibiting, and selling motion-picture films for advertising purposes. Its business operations consist in purchasing advertising films, in manufacturing such films, either in its own studio or in the plants and places of business of its clients, in the sale of both negative and positive films, and in securing the exhibition of such films in various motion-picture theatres.

To secure the exhibition of advertising films, the taxpayer, during the years in question, had contracts with approximately 100 motion-picture theatres. These contracts, designated in the petition as leases, were for terms that averaged, approximately, five years. The contracting theatre displayed the films and charged the taxpayer an agreed amount for such service. In some instances payments for exhibitions were made in advance, but such payments were always thereafter deducted from amounts due under the contracts involved. Nothing was ever paid for the contracts as such.

The taxpayer estimated the value of the leases or contracts that it had with motion-picture theatres on December 31, 1919, at $100,000. In its income and profits-tax returns for 1920 and 1921 it included the value assigned to such contracts in its invested capital in amounts not disclosed by the record. In its income and profits-tax return for the year 1921, it deducted the amount of $9,364.87 from its gross income as exhaustion of the capitalized value of such so-called leases, although it had taken no such deduction in any previous year.

In the operation of its business it was necessary for the taxpayer to keep considerable quantities of completed motion-picture films in stock. These films were of at least three kinds, viz, negative films from which positive films for sale to customers were printed from time to time; positive films, either manufactured in its own studio or purchased from other producers in anticipation of orders; and special stock negative films made for the purpose of illustrating and advertising particular plants and industries. A portion of this stock of films was stock in trade. Another portion was negative films used for the production of positive films to supply orders. The taxpayer's accountants depreciated the value of films, and deducted such depreciation from gross income for the years in question. At December 31, 1919, 1920, and 1921, the taxpayer's book inventories of alleged stock in trade films were $23,660, $23,171.38, and $34,553, respectively.

Upon audit of the taxpayer's income and profits-tax return for the year 1919, the Commissioner added to income the amount of $6,537.63, alleged to have been deducted on account of exhaustion of so-called theatre leases, although no such charge was made to profit and loss account for that year. This amount represents certain adjustments of the book value of theatre leases, and was not included in the taxpayer's deduction from gross income for the year 1919.

### OPINION.

LANSDON: Since the taxpayer's first two contentions involve the value of the so-called theatre leases, these points may be regarded as a single issue. No copy of the instruments evidencing the alleged leases was offered at the hearing, but the testimony indicates that the contracts, made for an average term of five years, are of such a nature as to entitle the taxpayer to exhaust or depreciate their cost, if any, for the purpose of ascertaining its invested capital and correct income for the years in question. It is well established that the proved cost of leases, patents, and contracts may, within the statutory limits, be included in the computation of statuory invested capital for excess profits purposes, that such cost, or March 1, 1913, value, may be exhausted ratably during the useful life of such property, and that such exhaustion is a proper deduction from gross income for each of the years in which it occurs. In the instant appeal, however, there is no evidence of any cost of the so-called leases. On the contrary, the testimony of the president of the taxpayer discloses that such leases were obtained without cost, except that in some instances an advance payment was made which invariably was deducted from the contract amounts specified for services under the lease.

The taxpayer obviously has capitalized its estimate of the earning power of the leases or contracts. The capitalized value of such property is not included in the statutory definition of invested capital, and was properly excluded by the Commissioner in his computation of the taxpayer's liability for profits taxes. As the so-called leases were acquired without any cost that the taxpayer has established, there is no basis in law or in fact for their inclusion in invested capital for profits tax purposes. The action of the Commissioner in disallowing exhaustion of such leases for the year 1921 must be approved.

The evidence discloses that the Commissioner erroneously added the amount of $6,537.63 to the taxpayer's income for the year 1919, as such amount was not taken as a deduction from gross income on account of exhaustion of theatre leases, but represents the taxpayer's own adjustment of the book value that it ascribed to the capitalized earning power of the leases in question. The Board, therefore, holds

that such amount should not be included in the taxpayer's gross income for the year 1919.

The record of this appeal is not clear in respect to the taxpayer's contention as to over-statement of closing inventories and consequent over-statement of profits earned during the taxable years in the respective amounts of $4,596.13 and $4,151.24. The petitioner asserts that its closing inventories for such years were erroneously computed by adding costs of purchases and of production to the opening inventories for the respective years, without making any adjustments for sales and abandonments on account of obsolescence, and that an actual physical inventory at the close of each of such years showed that films in stock at December 31, 1919, December 31, 1920, and December 31, 1921, had cost $23,660, $18,575.25, and $26,294.25, respectively.

The evidence on this point, which we have been able to include in our findings of fact, indicates that some of the inventoried films were capital items, and that some were stock in trade. There is nothing in the record that enables us to distinguish between the two classes of films or to find any definite value for either. Nor is there any satisfactory evidence of the value or cost of such films. The testimony discloses that some of them were purchased from other producers, and that some were manufactured by the petitioner, but there is no evidence that the figures of value on the inventories represent cost or cost or market, whichever is lower, even as to such items as might be properly classified as stock in trade. The Board, therefore, approves the action of the Commissioner in refusing to readjust the figures of the petitioner's original or book inventories.

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*